IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) Robert Young, on behalf of himself and all others similarly situated, )
)
)
v. ) Case No.: 17-cv-00101-GKF-TLW
)
(1) East Texas Medical Center Regional Healthcare System, Inc., a Texas nonprofit corporation; )
)
)
) JURY TRIAL DEMANDED
(2) East Texas Medical Center Regional Health Services, Inc., a Texas for-profit corporation; )
)
)
)
(3) PARAMEDICS PLUS, L.L.C., a Texas limited liability company; )
)
)
(4) EMERGENCY MEDICAL SERVICES AUTHORITY, an Oklahoma public trust; )
)
)
(5) HERBERT STEVEN WILLIAMSON, an Individual; )
)
)
(6) KENT TORRENCE, an Individual. )

## COMPLAINT

The Plaintiff, Robert Young, on behalf of himself and all others similarly situated, hereby alleges and states the following:

## PARITES

1. The Plaintiff, Robert Young, ("Plaintiff" and/or "Plaintiffs") is an individual resident of the State of Oklahoma and resided in the City of Tulsa, Oklahoma, and has at all times relevant hereto been a participant in the Emergency Medical Services TotalCare program, and has paid the monthly fee on his monthly utility bill.

2. East Texas Medical Center Regional Healthcare System, Inc., ("ETMC System")

is a Texas nonprofit corporation headquartered in Tyler, Texas, that owns and operates a number of health care facilities, including an acute-care hospital located in Tyler, Texas. ETMC System transacted business in the Northern District of Oklahoma during the relevant time frame of this action. ETMC System may be served through its registered agent in the State of Oklahoma, The Corporation Company, 1833 S. Morgan Road, Oklahoma City, Oklahoma 73128.

3. East Texas Medical Center Regional Health Services, Inc. ("ETMC Services") is a Texas for-profit corporation headquartered in Tyler, Texas, that is affiliated with ETMC System. ETMC Services transacted business in the Eastern District of Texas during the relevant time frame of this action. ETMC Services may be served through its registered agent, Elmer G. Ellis, at 1000 South Beckham Avenue, Tyler, Texas 75701.

4. Paramedics Plus ("Paramedics Plus") is a Texas limited liability company and for-profit subsidiary of ETMC. Paramedics Plus's principal office is located in Tyler, Texas, and Paramedics Plus transacted business in the Northern District of Oklahoma during the relevant time frame of this action. Paramedics Plus may be served through its registered agent, Elmer G. Ellis, at 1000 South Beckham Avenue, Tyler, Texas 75701.

5. Emergency Medical Services Authority ("EMSA") is an Oklahoma public trust established pursuant to 60 O.S. § § 176 *et seq.,* as amended, created by trust indenture on December 1, 1977. An Amended and Restated Trust Indenture became effective March 1, 1990. EMSA is operated by public employees and provides, through the services of a contractor, emergency and non-emergency transport services in and around Tulsa and Oklahoma City. EMSA transacted business in the Northern District of Oklahoma during the relevant time frame of this action. EMSA may be served at 1111 Classen Drive, Oklahoma City, Oklahoma 73103, 1417 N. Lansing, Tulsa, Oklahoma 74106, and through its beneficiaries, Oklahoma City and the City of Tulsa.

6.  Herbert Stephen Williamson ("Williamson") is an individual resident of Oklahoma. Williamson transacted business in the Northern District of Oklahoma during the relevant timeframe of this action. Williamson currently resides in Tulsa, Oklahoma, and can be served at the business address of 1111 Classen Drive, Oklahoma City, Oklahoma 73103 or 1417 N. Lansing, Tulsa, Oklahoma 74106.

7.  Kent Torrence ("Torrence") is an individual resident of Oklahoma. Torrence has transacted business in the Northern District of Oklahoma during the relevant timeframe of this action. Torrence currently resides in Broken Arrow, Oklahoma, and can be served in Broken Arrow, OK 74011 and/or the business address of 1111 Classen Drive, Oklahoma City, Oklahoma 73103 or 1417 N. Lansing, Tulsa, Oklahoma 74106.

8.  Unless identified individually, all named Defendants will be referred to as "Defendants", collectively.

## JURISDICTION AND VENUE

9.  This action is brought as a class action pursuant to Rule 23, Federal Rules of Civil Procedure ("FRCivP"), the Class Action Fairness Act, 28 U.S.C. Section 1332 ("CAFA"), and contains counts brought pursuant to 18 U.S.C.A. Section 1962, et seq.

10. Subject matter jurisdiction arises under Rule 23, FRCivP, CAFA 28 U.S.C. Section 1332(d)(2), and 18 U.S.C.A. Section 1962, et seq. The amount in controversy is in excess of $5,000,000.00, exclusive of interest, costs and attorney fees.

11. Personal jurisdiction is based on diversity of citizenship, CAFA 28 U.S.C. Section 1332(d)(2)(A), and 18 U.S.C.A. Section 1962, et seq.

12. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) and (c) since one or more of the Defendants transact business in this district and/or one or more of the acts at issue

occurred in this district.

## RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

13. Defendants Paramedics Plus and ETMC System and ETMC Services are affiliated entities governed and controlled by the same individuals and whose operations are inextricably intertwined. Specifically, these Defendants share common management, finances, control, and supervision. Paramedics Plus and ETMC System and/or ETMC Services acted in concert to facilitate and cause the submission of false claims to the United States. Paramedics Plus and ETMC System and/or ETMC Services are jointly and severally liable for the actions of the other. Paramedics Plus and ETMC System and ETMC Services are also vicariously liable for the actions of their executives, other employees, and agents.

14. Defendant EMSA is similarly vicariously liable for the actions of its President, Herbert Stephen Williamson, its Chief Financial Officer Kent Torrence, and its other employees and agents.

## CLASS ACTION ALLEGATIONS

15. Plaintiffs bring this action pursuant to Rule 23, FRCivP, as a class action for himself and as representative of and for, and on behalf of, all other similarly situated persons ("Class Members"). The Class Members are defined as participants in EMSA's Utility Fee Program from 2008 through 2013 who were detrimentally affected by Defendants' fraud, conspiracy to defraud, and violations of other State and Federal laws which Defendants engaged in in furtherance of their conspiracy to defraud, as alleged herein. The Class excludes officers or employees of Defendants and any person or entity whom Plaintiffs' counsel is prohibited from representing under the Oklahoma Rules of Professional Conduct.

16. Plaintiff has been informed and believes, and on such information and belief allege

4

that the Class Members are numerous, reside in diverse cities in Oklahoma and that the joinder of all Class Members is impracticable.

17. Plaintiff has been informed and believes, and on such information and belief allege, that the individual loss and potential recovery of each Class Member is such that each is precluded from individually litigating the claims asserted herein by reason of the burdens, costs and expenses involved and that many Class Members will never have their day in court unless this action proceeds as a class action.

18. This action is governed by Federal law.

19. There are substantial questions of law and fact common to the claims of the Class Members against defendants.

20. The claims of Class Plaintiff is typical of the claims of each and all of the Class Members and are based upon and arise out of the identical facts concerning the conduct of the defendants.

21. Plaintiff is situated to, capable of, and will fairly and adequately represent the interests of the Class Members. Because of the similarity and identity of claims of Plaintiff and the individual Class Members, the successful assertion of Plaintiffs' claims herein will result in the determination of law and facts adequate to prove the liability of defendants to each Class Member.

22. The prosecution of separate actions by the individual Class Members, even if possible, would create a risk of inconsistent or varying adjudications or verdicts that may establish incompatible standards of conduct for defendants.

23. Defendants' acts alleged herein are applicable to all Class Members, making the relief sought generally applicable to all of the Class Members.

24. The questions of law and fact common to the claims of the Class against defendants

are also common to the claims of each of the Class Members against the Defendants, and predominate over questions, if any, affecting individual Class Members.

25. A class action is superior to other available methods, if in fact any such other methods are available (which Plaintiffs deny), for the fair and efficient adjudication of the matters alleged herein.

**GENERAL ALLEGATIONS AND FACTUAL BACKGROUND**

26. EMSA was established in 1977, and operates a Public Utility Model of ambulance services in Tulsa and Oklahoma City.

27. As a public trust, EMSA does not provide the ambulance services, but contracts with a private contractor to provide ambulance services in Tulsa and Oklahoma City.

28. From 1994 to 1998, EMSA's private contractor was American Medical Response ("AMR").

29. On November 1, 1997, EMSA issued a Request for Proposal to determine whether another private contractor could provide the same or better services as AMR for a lower cost.

30. As a public entity, EMSA is subject to the requirement of open bidding. Open bidding means that bidding to provide services to EMSA, as a private contractor, are open to the public.

31. On June 19, 1998, ETMC Services submitted a bid, on behalf of Paramedics Plus, for the EMSA contract.

32. On June 22, 1998, days after the submission of the bid for the EMSA contract, ETMC Services formed Paramedics Plus as an LLC under Texas law.

33. On July 29, 1998, at the EMSA Board of Trustees meeting, Williamson recommended the selection of Paramedics Plus as the provider for ambulance services despite the fact that Paramedics Plus had no authority to conduct business in Oklahoma.

34. On September 23, 1998, EMSA announced that it awarded the ambulance service

6

contract to Paramedics Plus.

35. On March 26, 2003, EMSA and Paramedics Plus modified the 1998 contract. The contract was extended for five (5) years, or until October 31, 2008.

36. In 2007, Williamson approached the City of Tulsa with an idea to provide funding to EMSA. Williamson recommended a program identified as TotalCare.

37. TotalCare involved a monthly fee collection from residents in Tulsa and Oklahoma City. The monthly fee was identified as $3.64 per household, and would be included on monthly water bills issued from the City of Tulsa and Oklahoma City.

38. The monthly fee of $3.64 per household was collected at the time the monthly water bills were paid. In return for the monthly fee, households enrolled in TotalCare would be covered for any ambulance transport for any individual living in the household. If the individual taking the ambulance ride had insurance, no further payment was required. If insurance denied the ride, the City of Tulsa or Oklahoma City, depending on the location, would reimburse EMSA for the trip and provide the full amount of the ride to EMSA. EMSA would then remit this payment to Paramedics Plus.

39. The amount charged per household was more than what the actual charges for the ambulance services cost. The actual cost of services for which Plaintiffs were charged was approximately fifteen percent (15%) less than what EMSA collected from Plaintiffs under the TotalCare program.

40. EMSA purposefully overcharged the monthly TotalCare fee, remitted the proceeds to Paramedics Plus, and then Paramedics Plus would kickback a portion of the profit to EMSA.

41. EMSA prepared a new Request for Proposal in 2007 to place the ambulance services contract for bidding.

42. On November 28, 2007, Williamson recommended extension of the ETMC Services and Paramedics Plus contract, and the EMSA Board of Trustees approved the extension.

43. After the extension was granted, Paramedics Plus and ETMC System and/or ETMC

Services paid EMSA, Williamson, and Torrence $1,035,500.00.

44. EMSA, including Williamson and Torrence, and Paramedics Plus then amended the ambulance services contract four (4) times between 2008 and 2013. At no point did any modification acknowledge that Paramedics Plus was kicking back profit to EMSA.

45. On October 28, 2008, Williamson signed the Second Modification to the EMSA ambulance services contract. Even though Paramedics Plus had not yet signed the modification, ETMC System and/or ETMC Services and Paramedics Plus issued two checks payable to EMSA on the same day Williamson signed the modification. The first check was for $1,000,000.00 as a "prepayment" of "rebates" for the 2008 to 2009 contract year that had not yet started. The second check was for $25,000.00 for Williamson's "travel."

46. From 1998 through 2013, ETMC System and/or ETMC Services and Paramedics Plus received approximately $45 million in profit through the EMSA contract. ETMC System and/or ETMC Services and Paramedics Plus kicked back over $20 million to EMSA.

47. Additionally, ETMC System and/or ETMC Services and Paramedics Plus paid EMSA's bills, or paid for services provided to EMSA. Specifically, ETMC and Paramedics Plus directly paid contractors, such as Connelly Paving Co., In Motion Technology, and Zoll Data Systems.

48. By having ETMC System and/or ETMC Services and Paramedics Plus directly pay contractors, EMSA was able to circumvent the public bidding requirements.

49. ETMC System and/or ETMC Services and Paramedics Plus paid for Williamson's personal expenses.

50. ETMC System and/or ETMC Services and Paramedics Plus issued payments directly to Torrence.

51. ETMC System and/or ETMC Services and Paramedics Plus made political contributions to Oklahoma politicians at EMSA and Williamson's request, at times sending the checks

directly to EMSA so that Williamson and EMSA could present the political contributions in person.

52. These contributions were not disclosed in any of EMSA's financial records.

53. These kickbacks to EMSA were identified as public relations expenses or profit sharing or excess profits ("profit cap"). However, this profit cap agreement was not identified in any contract between EMSA and ETMC System and/or ETMC Services /Paramedics Plus.

54. Paramedics Plus claimed in its marketing materials that it was giving money back to the communities by paying cash to the public entities that awards it contracts.

55. However, Defendants never reduced profit cap contract to writing. There was no identification of when payments would be made or how the payments would be calculated. Instead, ETMC System and/or ETMC Services and Paramedics Plus paid large sums of money to EMSA whenever EMSA asked or whenever ETMC System and/or ETMC Services and Paramedics Plus had something to gain. Williamson even instructed ETMC System and/or ETMC Services and Paramedics Plus to pay Oklahoma politicians, noting that the payments would be booked "against the profit cap."

56. In September 2012, Williamson asked EMSA's law firm to prepare a ghostwritten letter, placed on Paramedics Plus's letterhead. The purpose of this letter was to hide the illegal kickback activity from State auditors. The letter was purposefully undated and contained false information. Paramedics Plus's President signed the letter, endorsing its false representations.

57. EMSA never "booked" the kickback payments from ETMC System and/or ETMC Services and Paramedics Plus in its accounting records. Instead, EMSA subtracted the amount of the payments made from the amount it paid Paramedics Plus, which EMSA then booked to show "cost savings." In other words, if EMSA paid Paramedics Plus $50 million one year but was paid kickbacks of $5 million, EMSA would simply and deceptively show payments to Paramedics Plus of $45 million.

58. Importantly, Paramedics Plus's own documents purporting to track profit percentage do not equal the amount of kickbacks paid.

## ALLEGATIONS AS TO NAMED PLAINTIFF

59. Plaintiff has been a resident of the City of Tulsa during the relevant time period and paid the TotalCare Fee on his monthly water bill.

60. Plaintiff relied on the representation from Defendants that the amount of the TotalCare fee was an accurate representation of the cost of the program.

61. Plaintiff relied on Defendants to protect his interests and accurately represent the costs of providing ambulance services.

62. In paying the TotalCare fee, Plaintiff did not consent to the scheme orchestrated by Defendants.

63. Plaintiff did not consent to being overcharged for the TotalCare program, and does not consent to the money received from the TotalCare program being used as kickbacks and for various expenses.

64. Plaintiff did not consent to the TotalCare fees being used, in part, to contribute to political campaigns.

## COUNT I
## FRAUD

65. Plaintiff incorporates by reference all prior allegations set forth above.

66. Count I is for fraud and arises under the common law of Oklahoma.

67. Defendants, and each of them, committed fraud upon Plaintiffs by intentionally misrepresenting that the cost of the services provided by ETMC System and/or ETMC Services and Paramedics Plus to EMSA, and therefore to Plaintiffs, was higher than it actually was, thereby causing Plaintiffs to pay more than each should have been required to pay had the contract between

10

ETMC Services and EMSA been arms-length and not an illegal kickback scheme.

68. Defendants, and each of them, intentionally misrepresented to Plaintiffs that the charges being paid for emergency ambulance services were being paid pursuant to a legal contract, and not an illegal kickback scheme.

69. Throughout the Claim Period, Defendants, and each of them, made at least one false material misrepresentation to Plaintiffs through solicitations of Plaintiffs to pay to participate in the EMSA TotalCare Program; which misrepresentation was made as a positive assertion which was known by Defendants to be false when made; which misrepresentation was made with the intention that Plaintiffs would act on it and participate in the EMSA TotalCare Program; and which Plaintiffs relied on to their detriment in enrolling (and continuing to enroll) in the EMSA TotalCare Program; and which caused Plaintiffs actual hard and damages.

70. Plaintiffs did not know, and could not have known of the illegal acts of the defendants herein alleged until the *Qui Tam* Complaint had been unsealed, on January 17, 2017.

71. Each class member has suffered actual damages because the illegal and fraudulent kickback scheme alleged herein directly caused the cost of the TotalCare charged to each Class Member to be higher than it otherwise would have been.

## COUNT II
## CONSPIRACY TO DEFRAUD

72. Plaintiffs incorporate by reference all prior allegations set forth above.

73. Count II is for conspiracy to defraud and arises under the common law of Oklahoma.

74. Defendants Williamson, Torrence, EMSA, ETMC System and ETMC Services all conspired together to do an unlawful act, that is, violate the federal Anti-Kickback Statute, 42 U.S.C. §1320a-7b (the "AKS")

75. The independently unlawful purpose of the conspiracy was to obtain money from Plaintiffs, and others, by illegally inflating costs by use of an illegal kickback scheme, as described

hereinbefore.

76. Each class member has suffered actual damages because the illegal and fraudulent kickback scheme alleged herein directly caused the cost of the TotalCare charged to each Class Member to be higher than it otherwise would have been.

## COUNT III
## VIOLATION OF THE RACKETEER INFLUENCED CORRUP ORGANIZATIONS ACT

77. Plaintiffs incorporate by reference all prior allegations set forth above.

78. Count III is for violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C.A. Section 1962, *et seq* (the "RICO" statute).  RICO provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct.

79. Here, Defendants Williamson, Torrence, ETMC System, ETMC Services and EMSA, through a conspiracy to defraud, did: actively and intentionally defraud Plaintiffs and others; through a criminal enterprise to violate the AKS, succeed in having EMSA award an over-cost contract to EMTC, in violation of the Federal kickback statute, and to renew that illegal contract through additional criminal conduct which was also in violation of the criminal anti-kickback statute; and, all of which conduct constituted a pattern of racketeering activity.

80. Each class member has suffered actual damages because the illegal and fraudulent kickback scheme alleged herein directly caused the cost of the Utility Fee Program charged to each Class Member to be higher than it otherwise would have been.

## COUNT IV
## Violation of Plaintiffs' Constitutional Rights by Defendant EMSA
## (42 U.S.C. §1983)

81. Defendant EMSA's policies, practices, procedures and customs resulted in a deprivation of Plaintiffs' well established Constitutional rights under the Fifth and Fourteenth Amendments.

82. Defendant EMSA's inadequate policies, practices and procedures oversight of its officers and employees resulted in a deprivation of Plaintiffs' well established Constitutional rights under the Fifth and Fourteenth Amendments.

83. Defendant EMSA's failure to supervise its officers and employees amounts to deliberate indifference.

84. Defendant EMSA made a conscious choice by failing to adequately supervise its officers and employees which resulted in a deprivation of Plaintiffs' well established Constitutional rights under the Fifth and Fourteenth Amendments.

85. Defendant EMSA's policy, practices, customs and procedures are nonexistent or wholly inadequate given the great power, authority and deference given to its officers and/or employees.

86. Defendant EMSA knew or should have known that Defendants Williamson and/or Torrence were likely to engage in the acts set forth above.

87. Defendant EMSA authorized or ratified the actions of Defendants Williamson and/or Torrence

88. As a result of Defendant EMSA's actions, policies, procedures and customs, Plaintiffs suffered damages.

### COUNT V
### Violation of Plaintiffs Constitutional Rights by Defendant Williamson
### (42 U.S.C. §1983)

89. Defendant Williamson is the Chief Executive Officer of Defendant EMSA.

90. As Chief Executive Officer of Defendant EMSA, Defendant Williamson acted under color of state law.

91. Defendant Williamson's actions were in violation of the policies and procedures of Defendant EMSA.

92. Defendant Williamson's actions led to a violation of Plaintiffs' well established Constitutional rights under the Fifth and Fourteenth Amendments.

93. Defendant Williamson's actions are in violation of 42 U.S.C. §1983.

## COUNT VI
### Violation of Plaintiffs Constitutional Rights by Defendant Torrence
### (42 U.S.C. §1983)

94. Defendant Torrence is the Chief Financial Officer of Defendant EMSA.

95. As Chief Financial Officer of Defendant EMSA, Defendant Torrence acted under color of state law.

96. Defendant Torrence's actions were in violation of the policies and procedures of Defendant EMSA.

97. Defendant Torrence's actions led to a violation of Plaintiffs' well established Constitutional rights under the Fifth and Fourteenth Amendments.

98. Defendant Torrence's actions are in violation of 42 U.S.C. §1983.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class Members, pray for judgment against Defendants, jointly and severally, in favor of themselves as to their respective claims alleged above and for the Class Members for the following relief: (1) money damages, the amount of which is presently unknown, but is believed to be in excess of $10,000,000.00, exclusive of interest and costs; (2) attorney fees as provided by law; (3) actual and exemplary damages in favor of Plaintiff and Class Members and against Defendants, jointly and severally; (4) such other relief, either at law or in equity, to which Plaintiff and Class Members show they are entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims that may be tried before a jury.

DATED: February 27, 2017.

Respectfully submitted,

*Bob L. Latham /s/*
Bob L. Latham, OBA No. 15799
Marcus N. Ratcliff, OBA No. 19201
Brandy L. Inman, OBA No. 22187
Heather C. Kinsaul, OBA No. 32579
Latham, Wagner, Steele & Lehman, P.C.
10441 S Regal Blvd, Suite 200
Tulsa, OK 74133
Tel: (918) 970-2000
Fax: (918) 970-2002
blatham@lwsl-law.com
mratcliff@lwsl-law.com
binman@lwsl-law.com
hkinsaul@lwsl-law.com

<and>

Robert K. Pezold, OBA No. 7100
1502 S. Boulder Avenue, Suite 15A
Tulsa, Oklahoma 74119
Telephone: 918-625-0003
rkpezold@tokenex.com
*Attorneys for Plaintiff*