IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBERT YOUNG, on behalf of himself and  )
all others similarly situated,          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )   Case No. 17-CIV-101-RAW-JFJ
                                        )
EAST TEXAS MEDICAL CENTER               )
REGIONAL HEALTHCARE SYSTEM,             )
INC., et al.,                           )
                                        )
        Defendants.                     )

## ORDER

Before the court is the motion to dismiss of defendants East Texas Medical Center Regional Healthcare System, Inc. ("System"), East Texas Medical Center Regional Healthcare Services, Inc. ("Services") and Paramedics Plus, L.L.C. ("PMP"). In the amended complaint (#33) plaintiff, as a class representative, alleges that he and the members of the class suffered damages as a result of an illegal kickback scheme and conspiracy undertaken by defendants to intentionally inflate the cost of a program ("TotalCare") for emergency ambulance transport in certain cities and municipalities in Oklahoma and to use the proceeds of the increased costs to fund the illegal kickbacks and bribes between defendants. Plaintiff alleges claims of fraud, constructive fraud, conspiracy to defraud, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and violation of constitutional rights under 42 U.S.C. §1983.[1]

More specifically, plaintiff alleges that Emergency Medical Services Authority ("EMSA"), an Oklahoma public trust, and its officers entered into a criminal enterprise, one of the objectives of which was a conspiracy with "ETMC", used to jointly refer to East Texas

---

[1] Against all movants are alleged the state law claim for fraud (Count I) and the RICO claim (Count IV). Against the ETMC defendants is alleged the state law claim for conspiracy to defraud (Count III).

Medical Center Regional Healthcare System, Inc. ("ETMC System") and an affiliated entity, East Texas Medical Center Regional Health Services, Inc. ("ETMC Services"). The objective of the conspiracy was to induce EMSA to award a contract for ambulance services to ETMC without an open bidding process. The contract was so awarded.[2] Ambulance services were provided by ETMC and another affiliated company, PMP; thereafter, ETMC and PMP paid EMSA and EMSA's president Herbert Steven Williamson (and others, including defendant Kent Torrence, EMSA's Chief Financial Officer) over $20 million in cash in exchange for the lucrative ambulance services contract that EMSA and Williamson controlled. The source of money for the illegal "kickbacks" came from (1) Medicare funds, (2) Medicaid funds, (3) private insurance payments, (4) private payors, and (5) payments made by citizens/residents of Tulsa and Oklahoma City. The funds in (5) refer to a Utility Fee (or "TotalCare") Program, by which a monthly fee for ambulance services was added to plaintiff's monthly utility bill.

Under Rule 8(a)(2) F.R.Cv.P., a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." All well-pleaded facts, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party. *Sweesy v. Sun Life Assurance Co.,* 2016 WL 1237880, *3 (10th Cir.2016). The court ultimately asks whether the complaint is facially plausible – that is, whether it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* The court's function at this stage is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted. *Id.*

---

[2]EMSA owns or leases ambulances, but does not employ drivers, emergency medical technicians (EMTs), or paramedics. Instead, EMSA contracts with a private contractor for personnel to actually perform health care services. (#33 at 9, ¶34).

2

Congress enacted RICO to combat the infiltration of organized crime and racketeering into legitimate organizations. *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). It created four new criminal offenses involving the activities of organized criminal groups in relation to an enterprise. *RJR Nabisco, Inc. v. European Community,* 136 S.Ct. 2090, 2096 (2016). 18 U.S.C. §1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. Finally, §1962(d) makes it unlawful to conspire to violate any of the other three prohibitions. *Id.* at 2097.[3] In addition to criminal enforcement of RICO's provisions, Congress provided civil RICO plaintiffs with the opportunity to recover treble damages, costs and attorney's fees if they can establish the elements of a RICO violation by a preponderance of the evidence. 18 U.S.C. §1964(c).

As stated, plaintiff alleges a violation of 18 U.S.C. §1962(c), which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Enterprise" is defined broadly in 18 U.S.C. §1961(4). An "association-in-fact" enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct. *Safe Streets Alliance v.*

---

[3] Plaintiff alleges a violation of 18 U.S.C. §1962(c). (#33 at 32, ¶124; #33 at 43, ¶156). In response (#61 at 4) to the present motion, plaintiff contends he also pled claims pursuant to §1962(b) and (d). The court does not find such claims explicitly pled in the amended complaint. It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. *See Kearney v. Dimanna,* 195 Fed.Appx. 717, 721 n.2 (10th Cir.2006). Given this court's ultimate rationale, which RICO provision was allegedly violated is not critical.

*Hickenlooper,* 859 F.3d 865, 882-83 (10th Cir.2017)(citations omitted).[4]  "Racketeering activity" is a term of art that RICO defines to encompass a list of state and federal crimes. A "pattern of racketeering activity" requires at least two acts of racketeering activity, occurring within the space of ten years. *See* 18 U.S.C. §1961(5).  The term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity, so that it is continuity plus relationship which combines to produce a pattern. *United States v. Knight,* 659 F.3d 1285, 1288-89 (10th Cir.2011)(citations omitted).

The list of potentially qualifying RICO predicate acts (i.e., acts which come within the definition of "racketeering activity") is contained in 18 U.S.C. §1961(1). *See Dalton v. City of Las Vegas,* 282 Fed.Appx. 652, 654 (10th Cir.2008).  "Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the threat of treble damages and injury to reputation." *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992).  Also, a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of §1962. *Deck v. Engineered Laminates,* 349 F.3d 1253, 1257 (10th Cir.2003).

To elaborate on the "by reason of" requirement, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a "but for" cause of his injury, but was the proximate cause as well. *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 9 (2010).  Proximate cause for RICO purposes requires some direct relation between the injury asserted and the injurious conduct alleged.  A link that is too remote, purely contingent, or indirect is insufficient. *Id.*

---

[4]Plaintiff alleges an enterprise of this type. (#33 at 32, ¶¶126-27). For purposes of the present motion, the court finds that plaintiff has adequately alleged the first two elements, i.e., conduct of an enterprise (at least as to the "bribes" and "kickbacks" allegations).

Application of this test first requires clarity as to the predicate offense or offenses asserted. Plaintiff alleges violations of 42 U.S.C. §1320a-7b, known as the federal Anti-Kickback Statute ("AKS"), may serve as qualifying predicate acts. (#33 at 9-10, ¶36; #33 at 25-26, ¶91; #33 at 38, ¶140). The court disagrees. The statute is not listed in 18 U.S.C. §1961(1). Section 1961(1) constitutes an exhaustive list.[5] *See also Ill. Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.,* 2014 WL 4104789, *9 (D.Minn.2014)("Violations of the anti-kickback statutes are not predicate acts under RICO. . . " ); *Wheeler v. Hilo Medical Ctr., Inc.,* 2010 WL 1711993 n.11 (D.Haw. 2010)(neither violations of 42 U.S.C. §1320 *et seq.* nor the False Claims Act are predicate acts under RICO).[6]  There is an Oklahoma Medicaid False Claims Act, 63 O.S. §5053, *et seq.,* but it appears to only carry civil penalties. Kickbacks in this context are also prohibited under Oklahoma law. *See* 56 O.S. §1005(A)(6) and 63 O.S. §1-742(A)(1). Again, however, felony punishment is not imposed.

Plaintiff, however, also alleges violation of the federal wire fraud and mail fraud statutes (*see, inter alia,* #33 at 13-14, ¶47; #33 at 35, ¶132; #33 at 38, ¶140), which are crimes listed in 18 U.S.C. §1961(1)(B). Arguably, plaintiff also alleges bribery in violation

---

[5]*See Ghosh v. Uniti Bank,* 566 Fed.Appx. 596, 597 (9th Cir.2014).

[6]The amended complaint herein (#33 at 25-26, ¶91) refers to a first-filed *qui tam* action, presently pending in the United States District Court for the Eastern District of Texas. This court has reviewed the complaint of the United States in partial intervention filed in that case, (*USA ex rel. Dean v. Paramedics Plus,* 14-cv-203 (E.D.Tex), docket no. 28) and the complaint in partial invention of the State of Oklahoma (*Id.*, docket no.36), not of course for the truth of the allegations, but merely to ascertain what the allegations are. *See Armstrong v. JPMorgan Chase Bank Nat'l Assoc.,* 633 Fed,Appx. 909, 911 (10th Cir.2015)(court may consider documents filed in other litigation without converting a motion to dismiss into a motion for summary judgment). In the Texas case, many of these same defendants face allegations of violating the AKS and the federal False Claims Act ("FCA").   It appears the two statutes are linked in the Texas litigation because the AKS provides that "a claim that includes items or services resulting from a violation of" the AKS "constitutes a false or fraudulent claim for purposes of" the FCA. 42 U.S.C. §1320a-7b(g). At one point in the amended complaint, plaintiff in the case at bar states that the complaint in the Texas litigation "contains the violations that constitute the predicate criminal acts or actions required for the application of [RICO], specifically the intentional conspiracy to violate and the subsequent violation of the [AKS]." (#33 at 25-26, ¶91). This court disagrees as to the AKS, for the reasons stated. No allegation regarding the TotalCare program is made in either complaint in the Texas litigation.

of Oklahoma law.  Bribery chargeable under state law and punishable by imprisonment for more than one year qualifies as a predicate act under §1961(1)(A).  Therefore, these predicate offenses will determine if the amended complaint is sufficient as to allegations of causation. A civil RICO "injury" is the "harm from the predicate acts" that constitute racketeering activity.  *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer,* 764 F.3d 1268, 1277 (10th Cir.2014).

"The elements of federal mail fraud as defined in 18 U.S.C. §1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." *United States v. Welch,* 327 F.3d 1081, 1104 (10th Cir.2003).  The elements of wire fraud are extremely similar, requiring evidence of (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations or promises, (2) an intent to defraud, and (3) use of interstate wire or radio communications to execute the scheme.  *United States v. Zander,* 794 F.3d 1220, 1230 (10th Cir.2015).  The particularity requirement of Rule 9(b) F.R.Cv.P., which applies to claims of wire fraud and mail fraud, is especially important where the RICO claim provides the basis for federal jurisdiction.  *See Cayman Exploration Corp. v. United Gas Pipeline Co.,* 873 F.2d 1357, 1362 (10th Cir.1989). This is the situation as to the moving defendants, as the RICO claim is the only federal claim alleged against them.

To be pled with particularity, the amended complaint must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.  *Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir.2006).  Plaintiff must also identify the purpose of the mailing within the allegedly fraudulent scheme. Moreover, any claim involving fraud, including mail fraud, must demonstrate the elements

of actionable fraud, including (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance[7]; (8) the hearer's right to rely on it; and (9) injury. *Id.*

Plaintiff alleges that each kickback or bribe payment "constituted separate predicate criminal acts" for RICO purposes and that the method of commission was "mail and wire fraud in the transfer of the kickbacks and bribes." (#33 at 13-14, ¶47); *see also* #33 at 16, ¶54; #33 at 34, ¶130). The court has its doubts. A mailing containing a kickback payment or a discussion about bribes among the participants themselves is not a fraudulent mailing.[8] While it might qualify as an act of mail fraud (depending upon the scheme to defraud), in the present context it more closely resembles mail <u>about</u> fraud. There is no allegation that these communications involved the TotalCare program. Also, such communications have no centrifugal aspect, i.e., reaching out to a prospective hearer beyond the alleged circle of participants and demonstrating an intent to defraud.[9] In the amended complaint (#33 at 41-42, ¶148), plaintiff lists the various types of communications involved in the "pricing fraud

---

[7]Reliance is not a necessary element in the RICO context, but is pertinent as to causation. The Supreme Court states that "[u]sing the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation." *Bridge v. Phoenix Bond & Indemnity Co.,* 533 U.S. 639, 648 (2008). The Court also stated, however, that "the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy §1964(c)'s proximate-cause requirement, but it is not in and of itself dispositive." *Id.* at 659. The Tenth Circuit also observes: "Nevertheless, in cases arising from fraud, a plaintiff's ability to show a causal connection between defendants' misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance on that misrepresentation." *CGC Holding Co., LLC v. Broad and Cassel,* 773 F.3d 1076, 1089 (10th Cir.2014).

[8]Mail fraud requires that fraudulent mailings be made. *Sasmor v. Meisels,* 2017 WL 3951768, *2 (2d Cir.2017).

[9]As stated, plaintiff also arguably alleges bribery under Oklahoma law as a predicate offense, but the same analysis obtains. As with kickbacks and false claims to Medicare, bribes are not transacted in public. Plaintiff tangentially acknowledges this by noting that he does not presently have access to many of the alleged predicates acts of mail and wire fraud. (#33 at 40-41, ¶147). In any event, no plausible causal nexus has been alleged between the bribes -- allegedly as part of the ambulance services contract – and the TotalCare program.

scheme." None of those alleged communications have a centrifugal aspect either, as they were not directed to plaintiff or the general public.

Plaintiff does allege a centrifugal aspect in paragraph 132 (#33 at 35), stating that through multiples instances of mail fraud and wire fraud, "EMSA knowingly made material misstatements or knowing[ly] chose not to disclose material information, to EMSA's board, health care payers, plan members, and the general public in furtherance of the fraudulent scheme. . . ." *See also* #33 at 36, ¶135 ("EMSA's misstatements to the public . . . "). First, the court notes that this allegation concerns EMSA, not the present movants. To the extent plaintiff is asserting that the other co-defendants are responsible for EMSA's alleged false statements under a "common scheme" theory, the alleged common scheme was to secure the ambulance services contract and receive kickbacks in return. No common scheme regarding the TotalCare program has been plausibly alleged.

Another feature of the amended complaint which does not survive under Rule 12(b)(6) is the prerequisite that plaintiff has standing to sue regarding a fraud perpetuated against the City of Tulsa ("the City"). Plaintiff alleges that the defendants' course of conduct was intended, in part, to "entice the relevant cities and municipalities to participate in the kickback contract." (#33 at 38, ¶139); *see also* #33 at 40, ¶145 ("intended to mislead the governments of the cities and municipalities"). The fee for the TotalCare program was set by the City and established by city ordinance. (#46-1). In this regard, plaintiff is an indirect victim rather than a direct victim. RICO requires a direct relation between the injury asserted and the predicate acts. *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 265-70 (1992).

Nevertheless, in a few paragraphs of the RICO allegations, plaintiff does allege fraudulent communications directed at plaintiff himself. The amended complaint alleges that

8

EMSA made material misstatements to the general public regarding "[t]he actual cost of providing emergency medical transport," "[t]he extent to which the actual cost of providing emergency medical transport departed from the artificially-inflated kickback contract price," and "[t]he extent to which the kickback scheme would force Plainitff and Class Members to incur additional expenses for their participation in the EMSA ambulance program." (#33 at 35-36, ¶132(a), (b) & (d)).

Plaintiff also alleges the "artificial inflation" of the actual costs of providing a medical transport program and ties this to "EMSA's misstatements to the public." (#33 at 36, ¶135.) Additionally, it is alleged that through mail and interstate wire facilities, EMSA distributed "promotional and other materials which claimed that the Paramedics Plus contract saved consumers like Plaintiff and Class Members money on their participation in EMSA's medical transport program." (#33 at 37, ¶136(d)). *See also* #33 at 38, ¶138(b); #33 at 39, ¶142. To the same effect is #33 at 42, ¶149. Plaintiff alleges that the defendants' racketeering activities were "intended to deceive Plaintiff and members of the class." (#33 at 39, ¶143). As to damages, plaintiff alleges the defendants' racketeering activity caused plaintiff and class members to pay inflated out-of-pocket expenses for the TotalCare program. (#33 at 42, ¶150).

The court finds these allegations inadequate. First, plaintiff has not pled mail and wire fraud with the particularity required by Rule 9(b) F.R.Cv.P., that is, "who, what, when, where and how" the alleged fraud occurred. *United States ex rel. Sikkenge v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 727 (10th Cir.2006). The specific mailings in question are of course not before the court regarding a motion to dismiss, and have not been adequately described under Rule 9(b). If they were mere "puffery" about the savings to a member of the public who enrolled in the TotalCare program as opposed to paying out-of-pocket for

9

ambulance services, such an allegation does not rise to the level of mail fraud. The court does not find it a plausible allegation that a mailing to the general public specifically contrasted savings from PMP being the service provider as opposed to another provider. Assuming a plausible allegation on the previous point, plaintiff has not plausibly alleged that he relied on a flier in the mail to enroll in TotalCare based upon PMP, as opposed to AMR, being the ambulance contractor. Again, plaintiff has not given the date or other specifics as to the alleged mailings. *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir.1991)("no specific mailings are mentioned . . . This is insufficient.").

Other allegations of causation the court finds illogical. Plaintiff alleges he has been damaged in that "a portion of the monies Plaintiff paid to EMSA, and which were transferred to Paramedics Plus, were also used to fund illegal kickbacks and bribes that were paid by Paramedics Plus directly to officers of EMSA, for travel expenses and spa treatments, and for direct political contributions requested to be made by EMSA and Williamson." (#33 at 27-28, ¶98). First, this is only injury to plaintiff's moral sensibilities, which is not an injury contemplated under RICO. Second, this paragraph alleges that EMSA took money paid to it under the TotalCare program, in turn paid that money to PMP, and then PMP paid the money <u>back</u> to EMSA, which had the money in the first place. The court does not find this allegation plausible.

The court now focuses on what it views as the essence of plaintiff's RICO claim. Plaintiff sues for "overpayments" as to the TotalCare program. (#33 at 5, ¶17). TotalCare is a "sham program" which is "designed to pass the funds to Paramedics Plus which then returned the funds to EMSA and others in the form of illegal kickbacks and bribes." (#33 at 26-27, ¶94). Again, as stated in the previous paragraph of this order, the court finds this allegation as to payment of money illogical. Although payment was made to the City, the

10

funds were then paid over directly to EMSA. (#33 at 27, ¶96). Plaintiff was "knowingly, fraudulently and systematically overcharged" as to the program. (#33 at 28, ¶100). Plaintiff seeks to demonstrate the overcharge through the fact that when the contract as to PMP expired, another ambulance company (AMR) made a bid and was awarded the contract for over $40 million per year <u>less</u> than PMP was paid. *Id.* Plaintiff alleges that he was "overbilled by EMSA each year for participation in the various city and municipality programs." *Id.* The monthly payments were based on TotalCare's inflated cost, "inflated wholly as a direct result of the Kickback Enterprise's illegal activities in violation of the Anti-Kickback Statute, mail and wire fraud." (#33 at 42, ¶151).[10]

Plaintiff's theory of damages, however, ignores the fact that the fee for TotalCare was assessed by the City pursuant to ordinance. (#46-1).[11] None of the defendants had control of the fee implementation or collection. If the awarding of the new contract to AMR involved $40 million per year less, then logically plaintiff should have seen a reduction by the City in the TotalCare fee. No such reduction is alleged in the amended complaint.[12]

Moreover, the specter of "indirect injury" arises again. In *Carter v. Berger,* 777 F.2d 1173 (7th Cir.1985), the Seventh Circuit held that taxpayers whose assessments were raised as a result of bribes made to the county assessor's office could not assert a RICO claim against those who paid the bribes. The reasoning was that the county was the directly injured party, and that RICO does not provide redress for taxpayers who were overcharged due to costs being "passed on" by the scheme's direct victim. *Id.* at 1175-76. *See also Amsterdam*

---

[10] In his response, plaintiff asserts: "But for Defendants' illegal payments, Young's cost to participate in the insurance program would have been less." (#61 at page 13 of 27 in CM/ECF pagination).

[11] The court may take judicial notice of municipal ordinances, without converting a motion to dismiss into a motion for summary judgment. *Zimomra v. Alamo Rent-A-Car,* 111 F.3d 1495, 1504 (10th Cir.1997)

[12] In any event, plaintiff has not alleged any criminal fraud recognized under Oklahoma law as a predicate act for his RICO claim.

*Tobacco Inc. v. Philip Morris Inc.,* 107 F.Supp.2d 210, 219-20 (S.D.N.Y.2000) ("Where, as here, the primary purpose of an alleged racketeering enterprise is to avoid paying taxes <u>or otherwise defraud the government</u>, indirectly injured parties do not have standing to bring RICO claims.")(emphasis added).

The analogy is not exact here, because the TotalCare fee ordinance provided that an individual could "opt out" of the program.[13] Still, the fact that the imposition of a fee and the amount of the fee passed through the City's decision-making process and was codified in an ordinance constitutes, in the court's view, an intervening cause as to rate assessment. The main point to be made is that it appears the vast majority of predicate acts alleged in plaintiff's complaint involved obtaining the ambulance service contract. ETMC and PMP having the ambulance contract led (according to the Texas litigation) to false claims being submitted to Medicare and Medicaid. This is wholly distinct from the TotalCare program.

In the court's view, the RICO violation upon which plaintiff wishes to rely is the course of conduct by which PMP and ETMC (allegedly) obtained the ambulance service contract. This violation, even if properly alleged and proved, did not cause plaintiff's injury. The alleged injury has its source in the TotalCare program. A plaintiff cannot establish proximate cause on a mail and wire fraud RICO claim when the alleged harm is distinct from the purported RICO violation. *New Mexico Oncology and Hematology Consultants, Ltd. v. Presbyterian Healthcare Services,* 54 F.3d 1189, 1241 (D.N.M.2014)(citing *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006)). When a court evaluates a RICO claim for

---

[13] In his response, plaintiff states that "he would have opted-out of the TotalCare program had he known of the illegal activities taken to insure the award of the Kickback contract to Paramedics Plus." (#61 at page 13 of 27 in CM/ECF pagination). An "opt-out" based on moral objections does not give rise to a claim for RICO damages. In any event, it is unclear how damages would be calculated. Had plaintiff opted out, of course he would have paid nothing to the TotalCare program. Perhaps if plaintiff had opted out, had need of ambulance service, and then been required to pay out-of-pocket for that specific ambulance ride, a claim for damages might arise.

proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries. *Safe Streets Aliiance v. Hickenlooper,* 859 F.3d 865, 889 (10th Cir.2017)(quoting *Anza, id.)*.

The demarcation between the "Kickback Enterprise" and the TotalCare program is made manifest within the amended complaint itself. The conspiracy regarding obtaining the ambulance services contract and subsequent bribes and kickbacks is alleged to have lasted "[b]eginning in 1998 and ending in 2013." (#33 at 8, ¶33). By contrast, the TotalCare program is alleged to have commenced in 2007 (#33 at 26, ¶93) and plaintiff describes the "claim period" as between 2007 and 2013 (#33 at 27, ¶97). While money involving the TotalCare program may well have intermingled with money involving bribes and kickbacks (under plaintiff's allegations), clearly the TotalCare program constituted, as movants state, merely "another revenue source for EMSA." (#46 n.12, pages 22-23 in CM/ECF pagination). The TotalCare program is not inescapably tainted by the happenstance that it was underway at the same time as was conduct allegedly in violation of the AKS and the False Claims Act.

The pertinent essence of plaintiff's allegations, that he was misled into participating in the TotalCare program, seems at best a garden-variety civil fraud claim. On one hand, the RICO statute provides that its terms are to be liberally construed to effectuate its remedial purposes. *United States v. Hutchinson,* 573 F.3d 1011, 1022 (10th Cir.2009). On the other, the standing requirement "helps to assure that RICO is not expanded to provide a cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3rd Cir.2000). These two concepts are not in tension in the case at bar, because in the court's view what plaintiff alleges as "RICO conduct" was separate from the gravamen of his cause of action. Even more straightforwardly as to the present motion, because the court agrees

13

that under the allegations "no Moving Defendant had anything to do with TotalCare" (#46 at page 9 of 33 in CM/ECF pagination)[14], the present motion is granted as to the RICO claim.

Because causation and damages appear to be fatal flaws in plaintiff's conception of the RICO claim, the court would likely not grant a motion to file a second amended complaint. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Fields v. City of Tulsa,* 753 F.3d 1000, 1012 (10th Cir.2014). If plaintiff elects to file such a motion, a copy of the proposed second amended complaint should be attached to the motion.

The RICO claim being dismissed, which is the only federal claim alleged against the movants, the court declines to exercise jurisdiction over the state law claims. *See* 28 U.S.C. §1367(c)(3); *VR Acquisitions, LLC v. Wasatch County,* 853 F.3d 1142, 1149-50 (10th Cir.2017). The state law claims asserted against movants are dismissed without prejudice.

It is the order of the court that the motion to dismiss (#46) is hereby granted pursuant to Rule 9(b) and Rule 12(b)(6) F.R.Cv.P. East Texas Medical Center Regional Healthcare System, Inc., East Texas Medical Center Regional Health Services, Inc, and Paramedics Plus. L.L.C. are dismissed as party defendants.

**ORDERED THIS 6th DAY OF NOVEMBER, 2017.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**

---

[14] In his response, plaintiff states that "the TotalCare fees collected from the class members were received by Paramedics Plus." (#61 at page 21 of 27 in CM/ECF pagination). Plaintiff cites ¶¶95 and 105 of the amended complaint in support, but the court does not see this assertion plausibly alleged.